IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
EASTERN DIVISION

2007 NOV 20  P 3: 02

| | | |
|---|---|---|
| WUNDERLICH-MALEC SYSTEMS, INC. | ) | DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA |
| **Plaintiff,** | ) | |
| | ) | **CASE NO.: 05-C-4343** |
| v. | ) | |
| | ) | **Action pending in the Northern District** |
| EISENMANN CORPORATION | ) | **of Illinois, Eastern Division** |
| | ) | |
| **Defendant.** | ) | 2 07-mc-3374-MEF |

## HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC'S MOTION TO QUASH AND OBJECTIONS TO SUBPOENA

**COMES NOW** Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), by and though its undersigned counsel, pursuant to Rule 45 of the Federal Rules of Civil Procedure, and hereby files this Motion to Quash and Objections to Subpoena. In support thereof, HMMA shows unto the Court the following:

1. On or about November 6, 2007, HMMA, a non-party to the above-styled action, was served by this Court with a subpoena (the "Subpoena") at its principal place of business at 700 Hyundai Boulevard, Montgomery, Alabama 36105, ordering it to produce and permit inspection and copying of certain requested documents at the offices of Campion, Curran, Dunlop & Lamb, P.C. in Crystal Lake, Illinois on November 21, 2007, and to appear and give a deposition at the offices of Campion, Curran, Dunlop & Lamb, P.C. in Crystal Lake, Illinois on November 30, 2007. A copy of the Subpoena is attached hereto as Exhibit "A".

A. **The Subpoena is Due to be Quashed**

2. Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure expressly requires a Court to quash or modify any subpoena that "requires a person who is not a party or an officer of

a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person. . . ." FED. R. CIV. P. 45(c)(3)(A)(ii).

3.    HMMA's selected deponent is employed at HMMA's principal place of business at 700 Hyundai Boulevard, Montgomery, Alabama 36105 and resides in the Montgomery, Alabama area. As such, he would clearly have to travel more than 100 miles from his place of employment and residence to testify at the Illinois deposition ordered by the Subpoena. For this reason alone, the Court should quash the Subpoena.

4.    In addition, Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure expressly requires a Court to quash or modify any subpoena that "fails to allow reasonable time for compliance" and/or "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A).

5.    The Subpoena orders the production of virtually every document relating to Eisenman, Wunderlich, and various other entities' work on the Body and Press Shop and Generally Assembly Shop at HMMA. In addition the Subpoena orders the production of numerous documents relating to HMMA's relationship with various other non-parties as well as numerous documents relating to work performed at non-HMMA plants, which are not in the possession and/or control of HMMA. Even if such requests were not objectionable, which they are, to the extent that HMMA has in its possession responsive documents, it would be virtually impossible and extremely costly for HMMA to gather the said documents in the two weeks provided by the Subpoena. As such, said Subpoena "fails to allow reasonable time for compliance" and/or "subjects [HMMA] to undue burden" in violation of Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure. For this additional reason, the Court should quash the Subpoena.

**B.    HMMA's Objections to the Requests for Production of Documents.**

6.      In addition to the foregoing reasons for quashing the Subpoena, HMMA has valid objections to each of the various requests for production of documents contained therein.

7.      Generally speaking, HMMA objects to any and all document requests to the extent they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

8.      Generally speaking, HMMA objects to any and all document requests to the extent they seek documents protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges or immunity.

9.      Generally speaking, HMMA objects to any and all document requests to the extent they seek confidential, financial, or proprietary business information.

10.     Generally speaking, HMMA objects to the Subpoena's broad definition of "Hyundai" and affirmatively asserts that it will only produce documents on behalf of, and in the possession and/or control of, HMMA.

11.     HMMA specifically objects to Request "A" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "A" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "A" to the extent that it seeks the production of confidential, financial, or proprietary business information. Lastly, HMMA objects to Request "A" on the grounds that the information sought therein could be more easily retrieved from other sources.

12.     HMMA specifically objects to Request "B" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "B" on the grounds that it

is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "B" to the extent that it seeks the production of confidential, financial, or proprietary business information. Lastly, HMMA objects to Request "B" on the grounds that the information sought therein could be more easily retrieved from other sources.

13.     HMMA specifically objects to Request "C" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "C" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "C" to the extent that it seeks the production of confidential, financial, or proprietary business information.

14.     HMMA specifically objects to Request "D" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "D" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "D" to the extent that it seeks the production of confidential, financial, or proprietary business information. Lastly, HMMA objects to Request "D" on the grounds that the information sought therein could be more easily retrieved from other sources.

15.     HMMA specifically objects to Request "E" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "E" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "E" to the extent that it seeks the production of confidential,

financial, or proprietary business information. Lastly, HMMA objects to Request "E" on the grounds that the information sought therein could be more easily retrieved from other sources.

16.     HMMA specifically objects to Request "F" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "F" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "F" to the extent that it seeks the production of confidential, financial, or proprietary business information. Lastly, HMMA objects to Request "F" on the grounds that the information sought therein could be more easily retrieved from other sources.

17.     HMMA specifically objects to Request "G" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "G" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "G" to the extent that it seeks the production of confidential, financial, or proprietary business information.

18.     HMMA specifically objects to Request "H" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "H" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "H" to the extent that it seeks the production of confidential, financial, or proprietary business information. Without waiving these objections, HMMA affirmatively asserts that it does not possess any documents responsive to Request "H".

19.    HMMA specifically objects to Request "I" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "I" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "I" to the extent that it seeks the production of confidential, financial, or proprietary business information.  Without waiving these objections, HMMA affirmatively asserts it does not possess any documents relating to YESAC's purported corporate relationship with Hyundai Mobis Co., Ltd.

20.    HMMA specifically objects to Request "J" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "J" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "J" to the extent that it seeks the production of confidential, financial, or proprietary business information.  Without waiving these objections, HMMA affirmatively asserts it does not possess any documents relating to YESAC's purported corporate relationship with Ace of Innovative Mechatronics Co., Ltd.

21.    HMMA specifically objects to Request "K" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "K" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "K" to the extent that it seeks the production of confidential, financial, or proprietary business information.  Without waiving these objections, HMMA affirmatively asserts that it does not possess any documents responsive to Request "K".

22.     HMMA specifically objects to Request "L" on the grounds that it does not know what is meant by the term "related entities". HMMA further objects to Request "L" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. In addition, HMMA objects to Request "L" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. Lastly, HMMA objects to Request "L" to the extent that it seeks the production of confidential, financial, or proprietary business information.

23.     HMMA specifically objects to Request "M" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "M" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "M" to the extent that it seeks the production of confidential, financial, or proprietary business information. Without waiving these objections, HMMA affirmatively asserts that it does not possess any documents responsive to Request "M".

24.     HMMA specifically objects to Request "N" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "N" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. In addition, HMMA objects to Request "N" to the extent that it seeks the production of confidential, financial, or proprietary business information. Without waiving these objections, HMMA affirmatively asserts that it does not possess any documents responsive to Request "N".

25.     HMMA specifically objects to Request "O" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery

of relevant or admissible evidence. HMMA further objects to Request "O" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "O" to the extent that it seeks the production of confidential, financial, or proprietary business information. Without waiving these objections, HMMA affirmatively asserts that it does not possess any documents responsive to Request "O".

26.    HMMA specifically objects to Request "P" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "P" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "P" to the extent that it seeks the production of confidential, financial, or proprietary business information. Without waiving these objections, HMMA affirmatively asserts that it does not possess any documents responsive to Request "P".

27.    HMMA specifically objects to Request "Q" on the grounds that the information sought therein is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Request "Q" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably limited in time and/or scope. HMMA further objects to Request "Q" to the extent that it seeks the production of confidential, financial, or proprietary business information. Lastly, HMMA objects to Request "Q" on the grounds that the information sought therein could be more easily retrieved from other sources.

C.    **Objections to the Topics for 30(b)(6) Deposition**

28.    Generally speaking, HMMA objects to any and all topics to the extent they are vague, overly broad, unduly burdensome, harassing and/or not calculated to lead to the discovery of relevant or admissible evidence.

29.     Generally speaking, HMMA objects to any and all topics to the extent they seek information protected from discovery by any privilege, including the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges or immunity.

30.     Generally speaking, HMMA objects to any and all topics to the extent they seek the discovery of confidential, financial, or proprietary business information.

31.     Generally speaking, HMMA objects to the Subpoena's broad definition of "Hyundai" and affirmative asserts that it will only testify on behalf of HMMA.

32.     HMMA specifically objects to Topic "A" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "A" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. Lastly, HMMA objects to Topic "A" on the grounds that the information sought could be more easily retrieved from other sources.

33.     HMMA specifically objects to Topic "B" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "B" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. Lastly, HMMA objects to Topic "B" on the grounds that the information sought could be more easily retrieved from other sources.

34.     HMMA specifically objects to Topic "C" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "C" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA

objects to Topic "C" on the grounds that the information sought could be more easily retrieved from other sources.

35.    HMMA specifically objects to Topic "D" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "D" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "D" on the grounds that the information sought could be more easily retrieved from other sources.

36.    HMMA specifically objects to Topic "E" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "E" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "E" on the grounds that the information sought could be more easily retrieved from other sources.

37.    HMMA specifically objects to Topic "F" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "F" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "F" on the grounds that the information sought could be more easily retrieved from other sources.

38.    HMMA specifically objects to Topic "G" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "G" to the extent that it seeks

the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "G" on the grounds that the information sought could be more easily retrieved from other sources.

39.    HMMA specifically objects to Topic "H" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "H" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "H" on the grounds that the information sought could be more easily retrieved from other sources.

40.    HMMA specifically objects to Topic "I" on the grounds that it does not know what is meant by the term "related entities". HMMA further objects to Topic "I" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. In addition, HMMA objects to Topic "I" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. Without waiving these objections, HMMA affirmatively asserts that it does not possess any information relating to Topic "I".

41.    HMMA specifically objects to Topic "J" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "J" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "J" on the grounds that the information sought could be more easily retrieved from other sources. Without waiving these objections, HMMA affirmatively asserts that it does not possess any information relating to Topic "J".

42.     HMMA specifically objects to Topic "K" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "K" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "K" on the grounds that the information sought could be more easily retrieved from other sources. Without waiving these objections, HMMA affirmatively asserts that it does not possess any information relating to Topic "K".

43.     HMMA specifically objects to Topic "L" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "L" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "L" on the grounds that the information sought could be more easily retrieved from other sources. Without waiving these objections, HMMA affirmatively asserts that it does not possess any information relating to Topic "L".

44.     HMMA specifically objects to Topic "M" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "M" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "M" on the grounds that the information sought could be more easily retrieved from other sources. Without waiving these objections, HMMA affirmatively asserts that it does not possess any information relating to Topic "M".

45.     HMMA specifically objects to Topic "N" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of

relevant or admissible evidence. HMMA further objects to Topic "N" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "N" on the grounds that the information sought could be more easily retrieved from other sources. Without waiving these objections, HMMA affirmatively asserts that it does not possess any information relating to Topic "N".

46.    HMMA specifically objects to Topic "O" on the grounds that the information sought is irrelevant and immaterial and not reasonably calculated to lead to the discovery of relevant or admissible evidence. HMMA further objects to Topic "O" to the extent that it seeks the discovery of confidential, financial, or proprietary business information. In addition, HMMA objects to Topic "O" on the grounds that the information sought could be more easily retrieved from other sources.

WHEREFORE, HMMA respectfully requests that this Court quash the Subpoena and nullify all of HMMA's obligations related thereto. In the alternative, HMMA respectfully requests that this Court order the subpoenaing party to reimburse it for all reasonable costs incurred in responding to the Subpoena.

Respectfully submitted,

_Robert S. W. Given_

Robert S. W. Given, Esq.
Attorney for HMMA

OF COUNSEL:
Bill Fishburne, Esq.
BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC'S MOTION TO QUASH AND OBJECTIONS TO SUBPOENA has been served on the following by directing same to their office addresses through first-class, United States mail, postage prepaid, on this the 20th day of November, 2007:

T. Louis Coppedge
Maynard, Cooper & Gale, P.C.
1901 6th Avenue N.
Suite 2400
Birmingham, AL 35203

Russell W. Baker, Esq.
Campion, Curran, Dunlop & Lamb, P.C.
8600 U.S. Highway 14, Suite 201
Crystal Lake, IL 60012

Carrie L. Berger, Esq.
Stein, Ray & Harris LLP
222 West Adams Street, Suite 1800
Chicago, Illinois 60606


_____
OF COUNSEL

RECEIVED
NOV 6 2007
BY: CNS

SAO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

FOR THE MIDDLE          DISTRICT OF          ALABAMA

WUNDERLICH-MALEC SYSTEMS INC

V.

EISENMANN CORPORATION

**SUBPOENA IN A CIVIL CASE**
Action pending in the Northern District of
Illinois, Eastern Division
Case Number:[1] 05 C 4343

TO:  Hyundai Motor Manufacturing Alabama, LLC
Custodian of Records
700 Hyundai Boulevard
Montgomery, AL 36105-9622

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Campion, Curran, Dunlop, & Lamb P.C. 8600 U.S. Hwy 14, #201, Crystal Lake, IL 60012 | DATE AND TIME  11/30/2007 '3:00 p.m. |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached Ryder A



| PLACE  Campion, Curran, Dunlop, & Lamb P C 8600 U.S. Hwy 14, #201, Crystal Lake, IL 60012 | DATE AND TIME  11/21/2007 11:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  _T. Louis Coppedge_ atty for defendant | DATE  11/5/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
T. Louis Coppedge    (205) 254-1000
Maynard, Cooper, & Gale P.C.
1901 6th Ave N. Suite 2400, B'ham, AL 35203

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e) on next page)

[1] If action is pending in district other than district of issuance, state district under case number

**EXHIBIT**
tabbies®
A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises— or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## RIDER

### Definitions and Instructions

1.    "Hyundai" shall mean Hyundai Motor Manufacturing Alabama, L.L.C. and any and all partners, including but not limited to any affiliated or otherwise related Korean entities, and its associates, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf

2.    "YESAC" shall mean YESAC Alabama Corp., an Alabama corporation, formerly known as Yient Alabama Corp., and any and all partners, including but not limited to any affiliated or otherwise related Korean entities, and its associates, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf.

3    "Wunderlich" shall mean Wunderlich-Malec Systems, Inc., a Minnesota corporation, Wunderlich-Malec Engineering, Inc., a Minnesota corporation, Wunderlich-Malec Services, Inc., a Minnesota corporation, and Wunderlich-Malec Environmental, a Minnesota corporation, and any and all partners, associates, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf, including but not limited to independent contractors

4.    "Eisenmann" shall mean Eisenmann Corporation, a Delaware corporation located in Crystal Lake, Illinois, and any and all partners, associates, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf.

5    "Project" shall refer to the Body and Press Shop and the General Assembly Shop (also known as the Final Assembly) at the Hyundai Motor Manufacture Alabama, LLC ("HMMA") automobile manufacturing plant, located in Montgomery, Alabama.

6.    "Kia Plant" shall refer to the Kia Motors Automobile Manufacturing Facility in West Point, Georgia

7    The period of time encompassed by this request shall be from June 2, 2003 to the date hereof unless otherwise specifically indicated

8.    As used herein, the term "person" shall mean a human or legal person such as a human being, corporation, sole proprietor-group or entity.

9.    As used herein, "documents" mean any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, but not limited to, letters, reports, e-mails, computerized instant messages, other written communications, correspondence, telegrams, memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, travel records or itineraries, forecasts, analyses, projections, work papers, photographs, tape recordings, models, statistical statements, graphs, laboratory and engineering reports, diagrams and notebooks, schematics, charts, plans, drawings, minutes or records of meetings, minutes or records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of consultants, appraisals, evaluations, financial statements, records, summaries of negotiations, contracts, agreements, leases, loan agreements, brochures, pamphlets, advertisements, circulars, trade letters, press releases, invoices, receipts, including preliminary drafts or revisions or copies of any of the foregoing if the copy is in any way different from the original now in your possession, custody or control, or

in the possession, custody or control of your counsel, independent public accountants, evaluation consultants, engineering consultants, agents, employees and/or persons acting on your behalf.

10    As used herein, "control" means actual possession, constructive possession, beneficially owning; power to obtain and ability to obtain any document.

11.    As used herein, the terms "concern," "concerning," "relating to," or "relate to," means referring to, or reflecting, in any manner logically, factually, indirectly or directly, the matter discussed These terms shall be broadly construed as necessary to bring within the scope of these Requests any discovery or information which might be construed or interpreted to be outside their scope

12.    As used herein, the term "communication" means any transmission of words or thoughts between or among two or more persons and includes, but is not limited to, spoken words, conversations, conferences, discussions, talks and reports, whether transmitted in person or by any electronic device such as telephone or radio, and documents as defined above

13.    Whenever appropriate, the singular form of a word shall be interpreted as the plural and the plural as the singular. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any discovery or information which might be construed or interpreted to be outside their scope. The term "each" includes "every" and the term "every" includes "each." The terms "a," "an" and "any," include "all" and "all" includes "a," "an," and "any " All terms shall be construed as necessary to bring within the scope of these Requests any discovery or information which might be construed or interpreted to be outside their scope.

14    If a document is responsive to a Request and is in your control, but is not in your possession or custody, produce the document and identify the person who had possession or

custody.

15     If any document was, but is no longer in your possession or subject to your control, identify the document, its author, recipient, and all persons copied, state what disposition was made of the document, by whom, and the date on which the disposition was made.

16.     If any information called for by this Request for Production is withheld on the grounds of any privilege, or for any other reason: (a) set forth the nature and date of the information; (b) set forth the privilege claimed and the basis upon which the information is claimed to be privileged; (c) identify each person to whom said information was disclosed, addressed, directed, circulated or shown; (d) identify all documents constituting, describing, referring or relating to said privileged information; and (e) identify each person to whom the documents identified in response to subparagraph (f) were disclosed, addressed, directed, circulated or shown.

17     This Request for Production of Documents shall be continuing in nature so as to require supplemental answers under oath if you, or anyone on your behalf, obtains further information between the time answers are served and the time of trial.

18.     Except as otherwise provided in the Requests, when producing the requested documents, you are to designate to which specific Request or Requests the document is responsive or produce the documents as they are kept in the ordinary course of business.

19.     If any portion of a document is responsive to any of the Requests, then produce the entire document.

20.     "Expert Reports" shall mean any original written, typewritten, handwritten, electronic, printed or recorded documents prepared by you identifying your opinions and/or conclusions related to your retention to provide professional analysis to respect to the Project

and/or this lawsuit.

## Requests for Production of Documents

A.   All documents related to any work performed by YESAC on the Project
concerning Eisenmann equipment, designs, layouts, specifications, or other work
previously performed by Eisenmann.

B.   All documents related to any work performed by Wunderlich, including but not
limited programming, commissioning, panel design, troubleshooting, and/or
consulting, which is related to YESAC's work on the Project.

C.   All documents, including but not limited to purchase orders, contracts, requests
for quotation, and correspondence, related to any agreements and/or negotiations
between Hyundai and YESAC for work on the Project

D.   All documents related to any copying, modifying, redesigning, reverse
engineering of existing panel designs or devices, or other engineering work
performed by YESAC on the Project

E.   All documents related to any panel work performed by Wunderlich for YESAC on
the Project.

F.   All documents related to panel work at the Project by YESAC where Rockwell
has or at any time had a systems contract with Eisenmann, including but not
limited contracts, purchase orders, requests for quotations, correspondence,
engineering diagrams and designs, and meetings of minutes.

G.   All documents related to panel work at the Project by Wunderlich where
Rockwell has or at any time had a systems contract with Eisenmann, including but
not limited contracts, purchase orders, requests for quotations, correspondence,

engineering diagrams and designs, and meetings of minutes.

H.   All documents related to Hyundai's relationship with YESAC including but not
     limited to documents indicating any shared ownership, shared management, joint
     ventures, a chaebol or jaebol relationship.

I.   All documents related to YESAC's relationship with Hyundai Mobis Co. Ltd.,
     including but not limited to documents indicating any shared ownership, shared
     management, joint ventures, a chaebol or jaebol relationship.

J.   All documents related to YESAC's relationship with Ace of Innovative
     Mechatronics Co., Ltd. (also known as AIMEKA, Inc.), including but not limited
     to documents indicating any shared ownership, shared management, joint
     ventures, a chaebol or jaebol relationship.

K.   All documents related to Hyundai's relationship with YIENI Company, Ltd ,
     including but not limited to documents indicating any shared ownership, shared
     management, joint ventures, a chaebol or jaebol relationship.

L.   All documents related to Hyundai's relationship with any related entities
     including but not limited to documents indicating any shared ownership, shared
     management, joint ventures, a chaebol or jaebol relationship.

M.   All documents related to YESAC's hiring of personnel, including but not limited
     to electrical engineers and electricians, for work on the Project.

N.   All documents related to any work performed by YESAC on the Kia Plant
     concerning Eisenmann equipment, designs, layouts, specifications, or other work
     previously performed by Eisenmann

O.   All documents related to any work performed by Wunderlich, including but not

limited programming, commissioning, panel design, troubleshooting, and/or consulting, related to YESAC's work on the Kia Plant

P.    All documents, including but not limited to purchase orders, contracts, requests for quotation, and correspondence, related to any agreements and/or negotiations between Hyundai and YESAC for work on the Kia Plant.

Q.    All work, including but not limited to any pallet work, performed by YESAC on the Project.

### Topics for 30(b)(6) Deposition

A.    Any work performed by YESAC on the Project concerning Eisenmann equipment, designs, layouts, specifications, or other work previously performed by Eisenmann

B.    Any work performed by Wunderlich, including but not limited programming, commissioning, panel design, troubleshooting, and/or consulting, related to YESAC's work on the Project

C.    Any agreements and/or negotiations between Wunderlich and YESAC for work on the Project.

D.    Any agreements and/or negotiations between YESAC and Hyundai for work on the Project.

E.    All work, including but not limited to any pallet work, performed by YESAC on the Project

F.    Any copying, modifying, redesigning, reverse engineering of existing panel designs or devices, or other engineering work performed by YESAC on the Project.

G.   Any requests for and/or panel work performed by Wunderlich for YESAC on the
     Project.

H.   Any requests for and/or panel work performed by YESAC on the Project.

I.   Hyundai's corporate structure and relationship with related entities, including but
     not limited to YESAC, Hyundai Mobis Co. Ltd , Ace of Innovative Mechatronics,
     Co., Ltd , YIENT Company, Ltd.

J    YESAC's hiring of personnel, including but not limited to electrical engineers and
     electricians, for work on the Project.

K.   Any work performed by YESAC on the Kia Plant concerning Eisenmann
     equipment, designs, layouts, specifications, or other work previously performed
     by Eisenmann.

L.   Any work performed by Wunderlich, including but not limited programming,
     commissioning, panel design, troubleshooting, and/or consulting, related to
     YESAC's work on the Kia Plant.

M.   Any agreements and/or negotiations between YESAC and Hyundai for work on
     the Kia Plant.

N.   Any agreements and/or negotiations between YESAC and Wunderlich for work
     on the Kia Plant

O.   Any technology taken by YESAC from the Project for use on any other Project